Filed 12/17/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Travis J., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>Travis J.,<br><br>     Defendant and Appellant. | A137797<br><br>(San Francisco City and County Super. Ct. No. JW09-6158) |

Travis J. entered into a plea agreement in the juvenile court, pursuant to which he admitted felony charges of assault with a firearm and carrying a concealed firearm in a public place. As part of the plea agreement, he stipulated to a commitment to the Department of Corrections and Rehabilitation Division of Juvenile Justice (also Division of Juvenile Facilities; hereafter DJJ). In exchange, the district attorney agreed to withdraw pending motions to determine if Travis was a fit and proper subject for adjudication under the juvenile court law, dismiss three remaining felony counts in the petition in which the plea was entered, dismiss four pending felony counts in another petition (including an armed robbery), and dismiss two pending probation violation petitions. Travis asked the court to impose, and the court did impose, a mitigated DJJ sentence of three years. Travis waived credits for all time served earned up to the date of sentence. The court issued an order for restitution to two victims and imposed various terms and conditions of probation.

Travis challenges the dispositional order, contending that a minor may not be committed to DJJ by stipulation, and that the matter should be remanded for

1

consideration of less restrictive alternatives. He also challenges the imposition of probation conditions and a portion of the court's restitution order. The People concede that the probation conditions are improper in the case of a DJJ commitment, and we will order them stricken. We find that the restitution ordered to one of the victims is not supported by substantial evidence and remand for further hearing on that issue. We otherwise affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

*Petitions Prior to 2011*

On December 22, 2008, the Santa Clara County District Attorney filed a wardship petition (Welf. & Inst. Code, § 602)[1] alleging that Travis, then age 14, committed grand theft and possessed stolen property (Pen. Code, §§ 484, 487, subd. (a), 496, subd. (a)). After Travis admitted receiving stolen property, the matter was transferred to San Francisco County for disposition. Travis was placed on home probation with his father.

On July 6, 2009, Travis's probation officer filed a request for an order of detention after Travis removed his ankle monitor and did not return to his father's home. On July 21, he was adjudged a ward of the juvenile court and was again placed on home probation with his father.

On August 21, 2009, the San Mateo County District Attorney filed a section 602 wardship petition alleging that Travis, then age 15, committed three misdemeanors: obstructing a police officer, misidentifying himself to a police officer, and defacing property (Pen. Code, §§ 148, subd. (a)(1), 148.9, subd. (a), 594, subd. (b)(2)). The matter was again transferred to San Francisco County, and Travis was detained at juvenile hall. Travis admitted obstructing a police officer, was redeclared a ward of the court, and was placed at Lifeworks Group Home in Booneville.

On May 21, 2010, a warrant issued for Travis's arrest after he absconded from Lifeworks Group Home. The warrant was recalled, on June 23, after Travis was taken

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

into custody. The juvenile court vacated the out-of-home placement order and placed him on home probation with his father. On September 17, a notice of motion to revoke Travis's probation (§ 777) was filed after he again left his father's home and failed to attend school. Travis was again returned home.

*2011 Petitions*

On August 26, 2011, San Francisco police investigated reports of shots fired. Marquita Davis, an adult, reported that Travis, her former boyfriend, approached the car she was sitting in, called her a bitch, and strangled her. When she began to cry, Travis released Davis, removed a handgun from his pocket, aimed it at her stomach, removed eight dollars from her pocket, and then fired the gun at the car's rear tire. Police found a flat rear tire, three shell casings, and one spent round on the ground.

On November 3, 2011, San Francisco police also investigated a call from Oliver Goldsmith stating that Travis had fired a gun at him. Goldsmith reported that he was in his van when another minor walked up to ask for some "weed." Goldsmith noticed Travis walking up behind the other minor with a gun in his hand. When Goldsmith accelerated away, he heard gunshots. When Travis fired at Goldsmith's van, a bullet singed the back of Goldsmith's neck. A second bullet passed through the rear passenger window and a third bullet passed through the van's rear window, shattering it. Travis was found in a nearby apartment, where a semiautomatic handgun was found inside the stove.

On November 7, 2011, two section 602 wardship petitions were filed against Travis, alleging a total of nine felony counts. The first petition, regarding the incident with Davis, alleged second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)), assault (Pen. Code, § 245, subd. (a)), and carrying a concealed and loaded firearm in a public place (Pen. Code, §§ 12025, subd. (a)(1), 12031, subd. (a)(1)). The second petition, regarding the incident with Goldsmith, alleged attempted murder (Pen. Code, §§ 187, 664), assault with a semiautomatic firearm (Pen. Code, §§ 245, subd. (b), 12022.5, 1192.7, subd. (c), 667.5, subd. (c)), discharging a firearm at Goldsmith while he was occupying a motor vehicle (Pen. Code, § 246), and carrying a concealed and loaded

3

firearm in a public place (Pen. Code, §§ 12025, subd. (a)(2), 12031, subd. (a)(1)).
Several firearms allegations also were alleged with respect to the robbery count in the
Davis petition and the attempted murder count in the Goldsmith petition (Pen. Code,
§§ 12022, subd. (a)(1), 12022.5, subd. (a)(1), 12022.53, subds. (b), (c)). The petitions
also included notice of aggregation of commitment time for the current and prior
sustained petitions.

With respect to both of the 2011 petitions, the district attorney requested a hearing
to determine whether Travis was fit for adjudication under the juvenile court law (§ 707).
Travis filed a motion asking the court to find that he was fit for juvenile court
adjudication, with supporting evaluations from Dayle Carlson, Marynella Woods, and
Amanda Gregory, Ph.D.[2] Carlson, Woods, and Gregory recommended that Travis be
placed in a Pennsylvania facility called the Glen Mills School. The probation report
concluded Travis was unfit to remain in juvenile court.

*The Plea Agreement*

On July 3, 2012, Travis entered into a plea agreement in which he admitted two
counts of the Goldsmith petition—assault with a semiautomatic firearm and carrying a
concealed weapon—and stipulated to a DJJ commitment. Travis also agreed to waive all
credits earned up to that date and to pay restitution on the dismissed counts in both the
first and second petitions. In exchange, the district attorney agreed to withdraw the
fitness motions, dismiss the remaining counts in the Goldsmith petition, dismiss the
Davis petition, and dismiss two pending probation violation petitions. The district
attorney calculated Travis's maximum term of confinement (MTC) on all pending
petitions to be 10 years, 8 months. Travis was declared a person described by
section 602. The court advised Travis that his MTC was 10 years, 8 months. However,

---

[2] Gregory evaluated Travis and concluded: "[Travis's] [e]xecutive functioning
assessment showed severely impaired cognitive flexibility and impulse control, as well as
concrete thinking and difficulty with abstraction. These findings suggest a delay in
frontal lobe functioning compared to same-age peers."

4

the appropriate term at DJJ was reserved for the court's independent consideration at disposition.

On July 13, 2012, Travis "petition[ed the juvenile court] for an [MTC] to the [DJJ] for the mitigated sentence of 3 years." Thereafter, the probation department filed the restitution investigation report, and Travis discharged his public defender and retained private counsel.

*Disposition Hearing*

At the disposition hearing on January 8, 2013, the court "redeclared" Travis a ward of the court and committed him to DJJ for a MTC of three years. The court took Travis's waiver of all credits earned up to that date, ordered Travis to pay $2,900 to Davis and $1,805 to Goldsmith in restitution, and imposed various terms and conditions of probation. The court explained its disposition as follows: "The Court finds that an award of custody to the parents would be detrimental to the minor and an award to a non-parent is required to serve the minor's best interests. A return of the minor to his home would be contrary to his welfare. [¶] Reasonable efforts have been made to prevent or eliminate the need for removing the minor from his home and to make it possible for the minor to return home. [¶] And the Court is fully satisfied that the mental and physical conditions and the qualifications of the minor are such as to render probable that the minor will be benefited by reformatory educational discipline or other treatment provided by the probation or juvenile justice. [¶] . . . [¶] The Court has weighed and considered less restrictive alternatives and that is not appropriate to this case. [¶] The Court has considered a number of factors, including the seriousness of the conduct, the need to protect society, the value of imposing discipline and accountability, extent of the minor's need for a structured institutional setting, and professional help, intensive counseling, and school programs provided by DJJ. . . . [¶] . . . [¶] And at this time I will issue a [MTC] of three years. I find there are multiple mitigation factors. Among them is that the victims were adults who actually also victimized the minor. And they . . . are the ones who . . . acted . . . very badly in many situations. And you being a minor, unfortunately, you took it a little bit too seriously and you did what you are alleged to have done. It got you into

trouble . . . . [¶] . . . [¶] And then I also took into consideration there are only property damages and there are no personal injuries to any of the victims. And that the minor has suffered emotional and cognitive deficits when he was growing up, coming from a very dysfunctional family home environment where the parents were fighting over him, causing Travis to be in a position of confusion and difficulty. And I took all of those [factors] into consideration, thereby mitigating your term of sentence to three years as the maximum."

At a clarification of disposition hearing on January 14, 2013, the court stated its reasons for selecting the mitigated three-year term, stayed execution of sentence on the count of carrying a concealed weapon, and elected not to aggregate the period of confinement on previously sustained petitions. At the same hearing, Travis's counsel argued that the restitution order to Davis was insufficiently verified. Specifically, he contended: "The damage to [Davis's] vehicle was to the tire. The police photographed the bullet hole that went through one of the tires. . . . [¶] . . . It is one tire. Under no circumstances could a tire be worth the amount that she is asking for nor . . . $400 of lost wages to get the tire repaired. . . . [¶] . . . There is some certain amount of restitution, unquestionably, but it is for . . . what this Court should deem one tire's worth, which is several hundred dollars at the most." After further argument on the issue, the court amended its previous restitution order so that Travis was now to pay Davis $850 and $1,025 to Goldsmith. Travis filed a timely notice of appeal from the dispositional order and the amended restitution orders.

## II.    DISCUSSION

On appeal, Travis argues: (1) the dispositional order must be reversed and remanded for evaluation of less restrictive alternatives because a minor cannot be committed to DJJ by stipulation; (2) the juvenile court erred by not exercising its full discretion in setting the MTC; (3) the juvenile court erred in ordering probation conditions, in addition to confinement at DJJ; and (4) the juvenile court abused its discretion in setting the amount of restitution to be paid Davis. We address each argument in turn.

6

A.    *Stipulation to DJJ Commitment*

Travis first contends: "[A] stipulated DJJ commitment is illegal. It does not comport with controlling California statutes, violates the separation of powers established by the California Constitution, and is inconsistent with recent United States Supreme Court cases concerning development of adolescent brains as it affects their ability to cooperate with counsel. The issue is one of first impression."[3] (Fn. omitted.)

Travis did not object to the DJJ stipulation either when the plea terms were stated in open court, or at the disposition hearing. Nor did he ever seek to withdraw his guilty plea. Accordingly, Travis forfeited his current argument by failing to raise it before the trial court. (*In re Sheena K.* (2007) 40 Cal.4th 875, 880–881.) However, "application of the forfeiture rule is not automatic." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue"], superseded by statute on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962; see *In re Karla C.* (2010) 186 Cal.App.4th 1236, 1267.) Because Travis raises a significant issue of law, we elect to address the merits.

The Welfare and Institutions Code contemplates that a juvenile may choose to admit the allegations of a jurisdictional petition alleging criminal conduct. "At the detention hearing or anytime thereafter, a minor who is alleged to come within the provisions of [s]ection . . . 602, may, with the consent of counsel, admit in court the

---

[3] " 'Under the separation of powers doctrine judicial powers may not be completely delegated to, or exercised by, either nonjudicial officers or private parties. [Citation.]' [Citation.]" (*In re James R.* (2007) 153 Cal.App.4th 413, 436, fn. 11.) However, none of the cases cited by Travis in support of his separation of powers argument are on point. (See, e.g., *id.* at p. 418 [juvenile court violated separation of powers when it delegated visitation determination to a private therapeutic program]; *In re S.H.* (2003) 111 Cal.App.4th 310, 317–318 [dependency court violated separation of powers when it "abdicate[d] its discretion and permit[ted] a third party . . . to determine whether any visitation [would] occur"]; *In re Julie M.* (1999) 69 Cal.App.4th 41, 43 [visitation plan requiring consent by dependent minors unlawfully delegates judicial authority].)

allegations of the petition and waive the jurisdictional hearing." (§ 657, subd. (b).) California Rules of Court, rule 5.778 addresses the process by which a minor may admit the allegations of a section 602 petition and provides, in relevant part: "(a) Petition read and explained (§ 700). At the beginning of the jurisdiction hearing, the petition must be read to those present. On request of the child, or the parent, guardian, or adult relative, the court must explain the meaning and contents of the petition, the nature of the hearing, the procedures of the hearing, and possible consequences. [¶] . . . [¶] (c) Admission of allegations; prerequisites to acceptance. The court must then inquire whether the child intends to admit or deny the allegations of the petition. . . . If the child wishes to admit the allegations, the court must first find and state on the record that it is satisfied that the child understands the nature of the allegations *and the direct consequences of the admission*, and understands and waives the rights in [subdivision] (b). [¶] (d) Consent of counsel—child must admit. Counsel for the child must consent to the admission, which must be made by the child personally. [¶] . . . [¶] (f) Findings of the court (§ 702). On an admission or plea of no contest, the court must make the following findings noted in the minutes of the court: [¶] (1) Notice has been given as required by law; [¶] (2) The birthdate and county of residence of the child; [¶] (3) The child has knowingly and intelligently waived the right to a hearing on the issues by the court, the right to confront and cross-examine adverse witnesses and to use the process of the court to compel the attendance of witnesses on the child's behalf, and the right to assert the privilege against self-incrimination; [¶] (4) The child understands the nature of the conduct alleged in the petition and the possible consequences of an admission or plea of no contest; [¶] (5) The admission or plea of no contest is freely and voluntarily made; [¶] (6) There is a factual basis for the admission or plea of no contest; [¶] (7) Those allegations of the petition as admitted are true as alleged; [¶] (8) The child is described by section . . . 602; and [¶] (9) In a section 602 matter, the degree of the offense and whether it would be a misdemeanor or felony had the offense been committed by an adult. . . . These determinations may be deferred until the disposition hearing. [¶] (g) *After accepting an*

8

*admission or plea of no contest, the court must proceed to disposition hearing under rules 5.782 and 5.785*." (Italics added.)[4]

Travis insists that the italicized language "expressly requires the juvenile court to educate itself concerning each minor's rehabilitative needs, and exercise dispositional discretion" and that "[t]he absence of any mention of a procedure for stipulation to a particular disposition, strongly suggests that plea bargaining counsel are not at liberty to usurp the Juvenile Court's dispositional duties." "When construing the California Rules of Court, we apply the usual principles of statutory construction, looking first to the words of the rule to determine the drafters' intent and when the language of the rule is clear and unambiguous, we need not probe the rule's drafting history. [Citation.]" (*Timothy J. v. Superior Court* (2007) 150 Cal.App.4th 847, 858.) The California Rules of Court cited here merely provide procedures for conducting the jurisdiction and disposition hearings. We fail to see any prohibition on the substantive nature of plea agreements reached at such hearings.

In *In re Uriah R.* (1999) 70 Cal.App.4th 1152 (*Uriah R.*), Division Four of this court considered whether a juvenile can effectively waive his right to appeal. (*Id.* at pp. 1154, 1158.) The minor noted that "waiver is not mentioned in either the statute authorizing juvenile appeals (. . . § 800) or the court rule governing admissions of criminal allegations (Cal. Rules of Court, [former] rule 1487) and thus conclude[d] that this omission 'is a strong indication that for juveniles, such a waiver is impermissible.' " (*Id.* at p. 1158.) The reviewing court rejected this argument, reasoning: "[T]here are two statutory recognitions that a juvenile can waive his constitutional right to counsel (. . .

---

[4] California Rules of Court, rule 5.778 is analogous to Penal Code section 1192.5, which governs the trial court's acceptance of a defendant's guilty or no contest plea in an adult case. (See *Ricki J. v. Superior Court* (2005) 128 Cal.App.4th 783, 791.) With respect to the disposition hearing, Welfare and Institutions Code section 706 provides, in relevant part: "After finding that a minor is a person described in Section . . . 602, the court shall hear evidence on the question of the proper disposition to be made of the minor. The court shall receive in evidence the social study of the minor made by the probation officer and any other relevant and material evidence that may be offered, including any written or oral statement offered by the victim . . . ."

§§ 634, 700) and two rule recognitions that a juvenile may waive additional constitutional rights and admit the charging allegations (Cal. Rules of Court, [former] rules 1485(e), 1487(f)). . . . [T]he person deemed intelligent enough to appreciate the consequences of admitting having committed a crime can also make an intelligent appreciation of the decision to forego review of that admission." (*Uriah R., supra,* 70 Cal.App.4th at p. 1158.) Although Uriah himself had not agreed to a stipulated disposition (*id.* at pp. 1155–1156, 1159), the court nonetheless acknowledged: "[J]uvenile waivers are subject to the same principles governing waivers by adults. . . . Like an adult criminal defendant, a juvenile can knowingly and intelligently waive or restrict appellate review, *particularly when the waiver is part of a plea bargain that includes a stipulated disposition.*" (*Id.* at p. 1154, italics added.)

*Uriah R.* is not directly on point. However, its reasoning is persuasive. Here, too, Travis presents no compelling reason that a juvenile is intelligent and mature enough to appreciate the consequences of admitting having committed a crime but is forestalled from agreeing to a particular disposition. Travis relies on a United States Supreme Court case holding that the Eighth Amendment forbids sentencing a juvenile offender to life in prison without parole for a nonhomicide crime. (*Graham v. Florida* (2010) 560 U.S. ____ [130 S.Ct. 2011] (*Graham*).) In reaching that conclusion, the court summarized developments in psychology that "show fundamental differences between juvenile and adult minds." (*Id.* at p. 2026.) The court observed: "[T]he features that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings. Juveniles mistrust adults and have limited understandings of the criminal justice system and the roles of the institutional actors within it. They are less likely than adults to work effectively with their lawyers to aid in their defense. [Citation.] Difficulty in weighing long-term consequences; a corresponding impulsiveness; and reluctance to trust defense counsel seen as part of the adult world a rebellious youth rejects, all can lead to poor decisions by one charged with a juvenile offense. [Citation.] These factors are likely to impair the quality of a juvenile defendant's representation. [Citation.] A categorical rule avoids the risk that, as a result of these difficulties, a court or jury will erroneously

10

conclude that a particular juvenile is sufficiently culpable to deserve life without parole for a nonhomicide." (*Id.* at p. 2032; see also *Miller v. Alabama* (2012) 567 U.S. ___ [132 S.Ct. 2455, 2464–2465, & fn. 5, 2468] (*Miller*) [raising similar concerns in holding that a sentencing scheme mandating life without parole for juveniles violates Eighth Amendment].)

If anything, *Graham* and *Miller* could be read to suggest that plea bargains—in their entirety, not just stipulated commitments—are suspect in the juvenile delinquency realm. Indeed, Travis's assertion that "adolescents' incomplete brain development leaves them ill-equipped to weigh long-term consequences, and work with defense counsel in plea bargaining" would seem to apply equally to jurisdictional stipulations. But we decline to read *Graham* and *Miller* as broadly as Travis suggests. Neither case addressed a juvenile's ability to plea bargain, and "it is axiomatic that cases are not authority for propositions not considered." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176.)

A case we find more on point is *In re Ricardo C.* (2013) 220 Cal.App.4th 688 (*Ricardo C.*). The Fourth District Court of Appeal considered whether a juvenile court's dispositional order was unlawful when it ordered a minor placed in a facility other than the Youth Offender Program (YOP) to which the parties had agreed as part of a negotiated plea agreement. (*Id.* at pp. 691–695.) In concluding that the People could enforce the terms of the plea bargain, the court observed: "Plea bargaining is a common feature in juvenile delinquency proceedings, just as it is in criminal proceedings in adult court. Similar principles apply in both settings. [Citations.] [¶] . . . [¶] [T]he juvenile court properly adverted to its own inherent discretion and duty to select a disposition that was in the best interest of minor. The court was correct that the parties could not themselves create a bargain that would usurp the juvenile court's discretion or bind the court to a disposition the court viewed as inconsistent with its duty. The juvenile court had duly advised minor that, although it initially approved the plea bargain, it might withdraw that approval depending upon the results of the probation report and the court's evaluation of an appropriate disposition. '[T]he court, upon sentencing, has broad discretion to withdraw its prior approval of a negotiated plea.' [Citation.] . . . That is

11

evidently what occurred here. The juvenile court considered the probation report, including the probation department's reasons for recommending a placement other than the agreed-upon assignment to YOP. The court exercised its independent discretion to select a placement at Twin Pines Ranch, rather than the agreed-upon placement at YOP. Once it determined to do so, however, the juvenile court had effectively withdrawn its approval of the plea bargain. Under such circumstances, the court could not proceed to apply and enforce certain parts of the plea bargain, while ignoring the provision that had been material to the People's agreement to the bargain. The court was therefore constrained to reject the plea bargain and to restore the parties to their former positions." (*Id.* at pp. 698–699.)

We have serious difficulty seeing how juvenile offenders (and in particular Travis) would be well served by the sweeping prohibition against sentence bargaining that Travis would have us adopt. *Ricardo C.* highlights the very practical problem for Travis that he overlooks in his challenge to the dispositional order. We agree that a plea agreement— whether in adult or juvenile court—cannot constrain the sentencing court's discretion if it ultimately finds that the agreed upon terms are unacceptable or inconsistent with the court's obligations. But, the People are correct that Travis may not seek to improve, on appeal, a bargain he struck in the trial court. Contractual principles govern a negotiated admission, and the general rule is that " '[a] defendant may not retain the favorable aspects of his negotiated disposition and at the same time jettison its unfavorable aspects.' " (*People v. Miller* (2012) 202 Cal.App.4th 1450, 1461.) Were we to accept that the court somehow failed to recognize its authority to reject a DJJ disposition for Travis, which we do not, the remedy would not be to simply set aside the disposition, but rather to allow the People to withdraw the plea agreement, restoring the seven dismissed felony charges, the two probation violation petitions, and the motions to find Travis unsuitable for juvenile treatment.

B.    *Any Error Was Harmless and Less Restrictive Alternatives Were Inappropriate*

We reject Travis's assertion that the juvenile court failed to recognize and exercise its continuing sentencing discretion in this case and his suggestion that the court simply

"rubber stamp[ed]" a disposition agreed to by the prosecution and defense. We further reject his contention that the matter must be remanded for consideration of less restrictive alternatives.

The juvenile court must find a commitment to DJJ to be a probable benefit to the minor. (§ 734.)[5] The court's sentencing colloquy made it quite clear that, while sentencing Travis in accordance with the terms of the plea agreement, it found that return to his home would be contrary to his welfare, that reasonable efforts had been made to prevent or eliminate the need for removing him from his home, and that Travis would be "benefited by reformatory educational discipline or other treatment" provided by DJJ. The court further expressly stated it had "weighed and considered less restrictive alternatives and that is [*sic*] not appropriate to this case."

"The standard of review of juvenile court commitment decisions is well established. 'The decision of the juvenile court or superior court may be reversed on appeal only upon a showing that the court abused its discretion in its commitment of the minor. A reviewing court must indulge in all reasonable inferences to support the findings of the juvenile court, and such findings will not be disturbed on appeal when there is substantial evidence to support them. [Citations.]' " (*In re Jose R.* (1983) 148 Cal.App.3d 55, 59–60, quoting *In re James H.* (1981) 121 Cal.App.3d 268, 273.)

Travis argues that the court should have accepted the recommendations of Carlson, his correctional consultant, and of Woods, a social worker employed by the public defender's office. Both proposed a placement at the Glen Mills School in Pennsylvania, which Travis insists was "clearly demonstrate[d]" to be an appropriate less restrictive alternative to DJJ. At the time of the disposition in January 2013, Travis was nearly 19 years old, and shown to be a recidivist offender whose most recent crimes

---

5 "No ward of the juvenile court shall be committed to the Youth Authority unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority." (§ 734.)

13

were two separate armed assaults, including attempted murder. He had previously failed in a less restrictive placement in Lifeworks Group Home, from which he absconded. Travis repeatedly absconded from home probation, had cut off his electronic ankle monitor, and had an outstanding warrant issued for his arrest at the time of his most recent offenses. Substantial evidence supports the specific findings made by the trial court. (*In re Robert D.* (1979) 95 Cal.App.3d 767, 773.)

C.      *Waiver of Custodial Credits and Imposition of a Three-Year MTC*

Travis next argues that, even if the DJJ commitment is permitted to stand, there must be a remand for the juvenile court to reset the MTC "in light of the totality of circumstances." Travis contends that the juvenile court simply selected the lower adult term as the MTC and failed to exercise its full discretion to set the term "based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the juvenile court." (§ 731, subd. (c).)[6] Travis also argues that the court erred in accepting a waiver of predisposition custodial credits, reiterating his contention that sentence bargaining is impermissible in a juvenile matter and that a waiver of credit for time served is "just as invalid" as a stipulation to a DJJ commitment. We again disagree.

Initially, for the reasons stated *ante*, we reject Travis's contention that his waiver of sentencing credits is either statutorily or constitutionally infirm. We see no reason that a minor may not make a knowing and intelligent waiver of predisposition custodial

---

[6] "A ward committed to the [DJJ] may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment that could be imposed upon an adult convicted of the offense or offenses that brought or continued the minor under the jurisdiction of the juvenile court. A ward committed to the [DJJ] also may not be held in physical confinement for a period of time in excess of the maximum term of physical confinement set by the court based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the juvenile court, which may not exceed the maximum period of adult confinement as determined pursuant to this section. . . ." (§ 731, subd. (c).)

credits, and the record demonstrates that Travis did so.[7]  (See *People v. Johnson* (2002) 28 Cal.4th 1050, 1055; *Uriah R., supra,* 70 Cal.App.4th at p. 1158.)

Travis has forfeited any claim that the juvenile court erred in its selection of the MTC.  In juvenile court, as in an adult criminal proceeding, a claim that the court failed to make or articulate a discretionary sentencing choice must be raised by objection in the trial court in order to preserve the claim for appeal.  (*In re Sheena K., supra,* 40 Cal.4th at p. 881.)  We would, in any event, reject on the merits Travis's contention that the juvenile court failed to understand and exercise its discretion under section 731, subdivision (c), in setting the MTC because it failed to check a box (No. 8(b)) on Judicial Council Forms, form JV-732 ("Commitment to the California Department of Corrections and Rehabilitation, Division of Juvenile Facilities") to confirm that the court "considered the individual facts and circumstances of the case in determining the maximum period of confinement."  Travis appears to suggest that a failure of the juvenile court to expressly confirm its consideration of section 731, subdivision (c) is per se reversible error, and he cites *In re Julian R.* (2009) 47 Cal.4th 487 (*Julian R.*), which discussed discretionary application of section 731 in determining whether the minor's MTC should be equal to or less than the MTC for an adult.  Travis specifically references a footnote of the *Julian R.* opinion which noted that then newly revised form JV-732 *required* the juvenile court to acknowledge its consideration of the crime's facts and circumstances and thus "in the future a court's exercise of its discretion will be evident."  (*Id.* at p. 499, fn.4.)

But the issue in *Julian R.* was whether the juvenile court in fact gave consideration to the "facts and circumstances" and whether an oral pronouncement, accompanied by a statement of reasons, was required.  The court held that there was no requirement for an oral pronouncement.  (*Julian R., supra*, 47 Cal.4th at p. 497.)  As here, the minor argued that "a reviewing court must presume from the record's silence that the juvenile court was either unaware of, or failed to perform, its statutory duty to consider that the 'facts

---

[7] The People assert that the three-year MTC was an element of the plea agreement. This is incorrect.  The appropriate minimum term was reserved for the court's independent consideration at disposition.

15

and circumstances' might warrant a confinement period shorter than the adult maximum term." (*Julian R.,* at p. 498.) Rejecting that argument, the court observed that applying such a presumptions would " 'ignore a cardinal principle of appellate review': [that a] ' " 'judgment or order of the lower court is *presumed correct*' " ' and ' "that a trial court is presumed to have been aware of and followed the applicable law." ' . . . [T]hus when 'a statement of reasons is not required and the record is silent, a reviewing court will presume the trial court had a proper basis for a particular finding or order.' " (*Id.* at pp. 498–499, citations omitted.)

Here the record was not silent. At the time Travis's plea was entered, defense counsel reminded the court of its obligation to make an independent finding on the appropriate DJJ term, reserving argument on the issue "to the time of disposition when the Court has a disposition report." Prior to the disposition hearing, defense counsel filed a "Motion for Disposition," specifically referencing section 731, subdivision (c), and the requirement that the MTC "take into account the facts and circumstances of the matter(s) that brought the minor under the jurisdiction of the juvenile court." Defense counsel argued that Travis's "minor delinquent history, and the unique facts and circumstances surrounding the offenses surrounding the offenses" warranted a three-year MTC. The court gave a detailed statement of reasons supporting its decision to select the three-year MTC. Although the juvenile court did not expressly reference section 731, subdivision (c), we are required to presume that the juvenile court "exercised its discretion in setting a maximum period of physical confinement that was measured against both the ceiling set by the maximum adult prison term and a possibly lower ceiling set by the relevant 'facts and circumstances' [citation] . . . ." (See *Julian R., supra,* 47 Cal.4th at p. 499, fn. omitted.)

D.    *Probation Conditions*

Next, Travis argues that the juvenile court erred in imposing probation conditions, in addition to the DJJ commitment. The People concede the error. Commitment to DJJ deprives the juvenile court of any authority to directly supervise the juvenile's rehabilitation. (*In re Owen E.* (1979) 23 Cal.3d 398, 404–405; *In re Ronny P.* (2004)

16

117 Cal.App.4th 1204, 1208; *In re Allen N.* (2000) 84 Cal.App.4th 513, 516 ["juvenile court's imposition of discretionary conditions of probation constitutes an attempt to regulate or supervise the minor's rehabilitation, a function solely in the hands of [DJJ] after the minor's commitment"].) Accordingly, we will strike the probation conditions.

E.      *Restitution to Davis*

Finally, Travis contends that the juvenile court's order providing for $850 in restitution to Davis is unsupported by substantial evidence. On this point, we agree.

"Generally speaking, restitution awards are vested in the trial court's discretion and will be disturbed on appeal only where an abuse of discretion appears. [Citation.]" (*In re K.F.* (2009) 173 Cal.App.4th 655, 661.) " ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' [Citations.]" (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.) "The court abuses its discretion when it acts contrary to law [citation] or fails to 'use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' [Citation.]" (*In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1016.) When, as here, the gist of the appellant's argument is that the evidence before the trial court was insufficient to establish the amount awarded, we review for substantial evidence. (*In re K.F.,* at pp. 661–662.)

The People assert that Travis's challenge to the restitution order has not been preserved for appeal. We reject the assertion because "[s]ufficiency of the evidence has always been viewed as a question necessarily and inherently raised in every contested trial of any issue of fact, and requiring no further steps by the aggrieved party to be preserved for appeal. [Citations.]" (*In re K.F., supra,* 173 Cal.App.4th at p. 660.)

1.      *Background*

As part of the plea agreement, Travis agreed to pay restitution on the dismissed counts in both the first and second petitions. However, no amounts were stipulated. The original order of $2,900 was based on Davis's claim, made to the probation officer, that she spent $1,500 repairing bullet holes, spent $1,000 on new rims and tires, and suffered

17

$400 in lost wages.  Although the juvenile court subsequently agreed that Davis's credibility was questionable, it awarded her $850 in restitution based on its own "reasonable estimate" of the damages.  The court explained:  "I think there is strong evidence that there are some credibility issues.  I agree with [defense counsel].  Nonetheless, [Travis] did . . . blow out one of [Davis's] tires . . . .  What I will do is make a reasonable estimate for what I believe the damages were. [¶] With respect to [Davis], what I see as documented . . . is that . . . there was one tire that was shot, I think that probably giving my most reasonable judgment I think probably would be in the amount of $800 for that tire. [¶] And in terms of lost wages, I agree that I don't see her here.  I have never seen her in court.  There is no documentation [supporting] where she works and why she incurred $400, but I do know there is some trouble when you have to take the tire to repair it and to retrieve it, so I will award $50 in terms of lost wages.  So the total amount awarded is $850 to [Davis.]"

2.      *Analysis*

Section 730.6 provides, in relevant part:  "(h) Restitution ordered . . . *shall be imposed in the amount of the losses*, as determined.  *If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court at any time during the term of the commitment* or probation.  The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. . . . A restitution order . . . , to the extent possible, shall identify each victim, . . . and the amount of each victim's loss to which it pertains, and shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602, including all of the following: [¶] (1) Full or partial payment for the value of stolen or damaged property.  The value of stolen or damaged property shall be the replacement cost of like property, or *the actual cost of repairing the property* when repair is possible. [¶] . . . [¶] (3) Wages or profits lost due to injury incurred by the victim . . . . (4) Wages or profits lost by the victim . . . due to time spent

18

as a witness or in assisting the police or prosecution. . . . [¶] . . . [¶] A minor shall have the right to a hearing before a judge to dispute the determination of the amount of restitution.  The court may modify the amount on its own motion or on the motion of the district attorney, the victim or victims, or the minor.  If a motion is made for modification of a restitution order, the victim shall be notified of that motion at least 10 days prior to the hearing on the motion."  (Italics added.)

"The purpose of an order for victim restitution is threefold, to rehabilitate the defendant, deter future delinquent behavior, and make the victim whole by compensating him for his economic losses.  [Citation.] . . . [¶] The order is not however, intended to provide the victim with a windfall.  [Citations.]"  (*In re Anthony M., supra,* 156 Cal.App.4th at p. 1017.)  A defendant bears the burden of proving that the amount of restitution claimed by the victim exceeds repair or replacement cost of lost or damaged property, but the defendant is not required to meet that burden until the replacement or repair cost of the victim's property is established.  (*People v. Vournazos* (1988) 198 Cal.App.3d 948, 958–959.)

Here, there is no evidence in the record that Davis paid $800 to replace a single tire or that she thereby lost $50 in wages.  The replacement or repair cost of the victim's property cannot be established simply by statements made by the victim to the defendant's probation officer.  (*People v. Vournazos, supra,* 198 Cal.App.3d at pp. 958–959; accord, *People v. Harvest* (2000) 84 Cal.App.4th 641, 653 ["mention of [victim's burial expenses] in the probation officer's report . . . may satisfy notice requirements for due process [citations], but it cannot take the place of evidence"].)  And, the juvenile court specifically indicated that it did not find Davis's statements to the probation officer credible.  Rather, the juvenile court based its restitution order to Davis on nothing more than speculation.  It thereby abused its discretion.  Accordingly, we will reverse the order and remand the matter for further proceedings to determine Davis's "economic losses incurred as the result of [Travis's] conduct."  (§ 730.6, subd. (h).)

### III. DISPOSITION

The trial court's restitution order is reversed and the matter is remanded for further proceedings consistent with this opinion. The discretionary conditions of probation imposed by the juvenile court are also stricken. As modified, the judgment is affirmed.


_____
Bruiniers, J.


We concur:


_____
Simons, Acting P. J.


_____
Needham, J.

Superior Court of the City and County of San Francisco, No. JW09-6158, Julie Tang, Judge.

Violet E. Grayson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Eric D. Share and Christina vom Saal, Deputy Attorneys General, for Plaintiff and Respondent.