Filed 4/8/14  In re E.G. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **In re E.G., a Person Coming Under the Juvenile Court Law.** | |
| **THE PEOPLE,** | |
| **Plaintiff and Respondent,** | **A139210** |
| **v.** | |
| **E.G.,** | **(Contra Costa County Super. Ct. No. J13-00091)** |
| **Defendant and Appellant.** | |

Appellant E.G. challenges a juvenile court order requiring him to pay $5,598.57 in direct victim restitution, arguing the losses were not adequately documented by the victim. We reverse a portion of the order and remand the case for a new restitution hearing.

## I.  BACKGROUND[1]

On January 10, 2013, 16-year-old appellant took his father's truck without permission and was driving with a friend, Miguel G., in Pittsburg, California. They stopped the truck and chased a 17-year-old classmate (victim), who was walking down

---

[1] Our recitation of the underlying facts is taken from our opinion in a prior appeal, which affirmed the jurisdictional order and probation conditions challenged by appellant, but remanded the case to the juvenile court to determine whether the commitment offenses should be declared misdemeanors or felonies. (*In re E.G.* (Nov. 8, 2013, A138253) [nonpub. opn.].)

1

the street.  When they caught up to the victim, they demanded his shoes and punched him repeatedly, causing him to fall against a fence.  The attack continued while the victim was on the ground.  Miguel took one of the victim's shoes, and he and appellant fled the scene.  As a result of the beating, the victim suffered a broken arm, as well as bruising on his right eye and stomach, and spent one night in the hospital.

Appellant was declared a ward of the juvenile court after he entered a no contest plea to battery causing serious bodily injury and grand theft from the person of another. (Welf. & Inst. Code, § 602; Pen. Code, §§ 243, subd. (d), 487, subd. (c).)  The court placed him on probation subject to 270 days' custody in a youth facility and set the matter for a restitution hearing.

An impact statement signed by the victim and submitted to the probation department described the financial consequences of the crimes against him:  "Had to pay emergency room, doctor's visits, parking, mileage to get to San Francisco, medication, ongoing appts, hospital bills ($4,000), loss of shoes, hat.  Mother has had to stay home so loses income."  A statement itemizing the victim's claimed losses included $2,073.57 for ambulance services by American Medical Response, $200 for Air Jordan tennis shoes; $35 for an "Obey" hat, $300 for the gas used in transportation to and from medical appointments in San Francisco, $200 for bridge tolls and parking during the trips to those appointments, $140 for medicine, $3,000 for the one month of income lost by the victim's mother when she took time off work ["She had to stay home to take me to all the appointments"], and $20,000 for "future recovery."  Also included in the claim were future appointments for "physical therapy, Dr. appoint[ments], and psychological and mental help," along with a future loss of income of $100,000 to $250,000.  No receipts, statements, invoices or documentation were submitted with the claim.

In a memorandum prepared in anticipation of the restitution hearing, the probation officer stated she had been unable to contact the victim's family since the dispositional hearing and recommended that restitution be set at $5,948.57 (presumably the amounts claimed for the ambulance, shoes, hat, gas, tolls, parking, medicine and mother's lost income).

A joint contested restitution hearing was held to determine the amounts owed by appellant and Miguel G., who was also the subject of juvenile wardship proceedings. The items at issue at the time of the hearing were the victim's hat, the ambulance services, the victim's medicine, the cost of gas, parking and tolls pertaining to the victim's medical appointments, and the victim's mother's lost income. The victim's mother was present at the hearing, but was not called as a witness by the district attorney.

Defense counsel argued the $35 claimed for the victim's hat was unsupported by any evidence that a hat was actually taken during the attack, noting there was no mention of a hat in the police report and the victim had told police no property other than his shoe was taken. The victim's mother conferred with the prosecutor, who then advised the court, "[S]peaking with the victim's mother, she states that he did have a hat on and it was taken from him and not recovered." The court found the $35 claimed for the hat was reasonable.

Defense counsel also challenged the amounts claimed for gas, parking and tolls, based on the lack of documentation for these expenses. The prosecutor noted that according to the victim's paperwork, the expenses were incurred during trips from the victim's home in Pittsburg to UCSF Benioff Children's Hospital in San Francisco. After further discussion about the number of trips that would be necessary for the claimed amounts to be reasonable, the district attorney advised the court, "[T]he [victim's] mother tells me that they went 15 times" between Pittsburg and San Francisco. Asked what kind of car the mother drove, the district attorney stated it was a Toyota Corolla, and he estimated the distance of the trips to be 40 to 50 miles each way, or 80 to 100 miles round-trip. The court commented that if mother had driven a total of 1200 miles (15 trips of 80 miles each), $300 for gas would be excessive, and cut the claim for gas expenses to $150. The court declined to reduce the $200 claimed for parking and tolls. It also ordered $140 for the victim's medicine, which, according to the victim's mother, consisted of antibiotics not covered by insurance.

Turning to the $3,000 claim for the victim's mother's loss of income, the court advised the district attorney, "I'm going to need some more information . . . before I

3

could grant such a claim." The district attorney responded, "The victim's mother tells me that she had a job in San Francisco where she worked for an attorney and she made [$]3,000 a month. And I think this was a little bit over a month and what we're talking about from the incident date because she had to keep taking her son back and forth. She wasn't able to go to work for that month and that's what the loss of income was." Asked by the court whether the victim's mother had any benefits paid during her leave, the prosecutor stated, "No. She had an agreement with—with her employer that—that she would be able to receive her job back once she goes back after that. So that wasn't part of any sort of agreement that they were going to pay for sick leave." The court asked what type of work the victim's mother did for the law firm, and the district attorney indicated it was "[d]oing filing, clerical work for an attorney in San Francisco."

Defense counsel indicated they wished to cross-examine the victim's mother and obtain her employment records, arguing her salary had not been adequately documented and no showing had been made she took an entire month off work to take the victim to medical appointments. The court ruled they were not entitled to subpoena and cross-examine the victim's mother or subpoena her employment records: "The law does not permit that type of inquiry to be made by the court of the victim." It denied defense counsel's request to call the victim's mother as a witness. "The victim is not subject to subpoena. The only right you have to cross-examine is if the witness is sworn and testifies; otherwise, you have no right to access the victim in terms of [a] restitution hearing. The burden is on you, as you know . . . ." The court offered to continue the hearing so defense counsel could attempt to obtain additional information to challenge the claim.

Defense counsel argued cross-examination was appropriate in this case because the victim's mother was "asking for money off from a job that we're not being allowed apparently to know who she worked for or what job. I can't ask her that because I'm not allowed to put her on to cross-examine her. I have literally no way to contradict whether she actually had a job." The court reiterated counsel had no right to cross-examine the witness. "[T]he idea is that when a victim is injured, the victim should not be reinjured

4

by having to go through the adversarial process of cross-examination . . . ." In light of the court's ruling they were not entitled to subpoena or cross-examine the victim's mother, defense counsel did not request a continuance of the hearing.

The court ordered the payment of $5,598.57 in direct restitution, consisting of $2,073.57 for the ambulance services, $35 for the victim's hat, $150 for gas (reduced from the $300 claimed), $200 for bridge tolls and parking, $140 for medicine, and $3,000 in lost wages for the victim's mother. The restitution order specified that appellant, Miguel G. and their parents were jointly and severally liable for this amount. The court deferred the restitution claim for the shoes, future medical costs and loss of future income.

## II. DISCUSSION

Appellant challenges the amount of restitution ordered for the hat, gas, bridge tolls, parking and the victim's mother's lost wages, arguing the victim did not provide an adequate factual basis for those items. He also contends the court abused its discretion and deprived him of due process when it denied his counsel's request to cross-examine the victim's mother about her job, her leave from work, and the number of trips to and from San Francisco for medical appointments. With the exception of the $35 ordered for the victim's hat, we agree the challenged portion of the order must be reversed.[2]

Direct victim restitution in a juvenile case is governed by Welfare and Institutions Code section 730.6, which tracks the adult offender restitution provisions in Penal Code section 1202.4. (*In re M.W.* (2008) 169 Cal.App.4th 1, 4; *In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1016.) " 'The purpose of an order for victim restitution is threefold, to rehabilitate the defendant, deter future delinquent behavior, and make the victim whole by compensating him for his economic losses. [Citation.] . . . [¶] The order is not[,]

---

[2] The court may accept a property owner's statement in a probation report about the value of lost or damaged property. (*People v. Lockwood* (2013) 214 Cal.App.4th 91, 96.) We conclude the victim's estimate of the cost of his hat was sufficient to support that aspect of the award and discuss that portion of the claim no further.

5

however, intended to provide the victim with a windfall. [Citations.]' [Citation.]" (*In re Travis J.* (2013) 222 Cal.App.4th 187, 204 (*Travis J.*).)

Though restitution awards are vested in the sound discretion of the juvenile court, and are subject to review under the deferential abuse of discretion standard, the court does not have the discretion to issue an order not authorized by law or to find facts for which there is no substantial evidence. (*In re K.F.* (2009) 173 Cal.App.4th 655, 661.) "[W]hile a trial court has broad discretion to choose a method for calculating the amount of restitution, it must employ a method that is rationally designed to determine the . . . victim's economic loss." (*People v. Giordano* (2007) 42 Cal.4th 644, 663-664 (*Giordano*).)

A victim seeking restitution has the initial burden of presenting "an adequate factual basis for the claim." (*Giordano*, *supra*, 42 Cal.4th at p. 664.) The court may consider information provided by the victim to the probation officer as prima facie evidence of economic loss, which shifts the burden to the defendant to disprove the amount of loss claimed by the victim. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543 (*Gemelli*); *In re S. S.* (1995) 37 Cal.App.4th 543, 546, 547, fn. 2; *People v. Foster* (1993) 14 Cal.App.4th 939, 947, superseded by statute on other grounds as stated in *People v. Birkett* (1999) 21 Cal.4th 226, 238-245; but see *Travis J.*, *supra*, 222 Cal.App.4th at p. 204 [losses cannot be established simply by statements of victim to probation officer].) The defense is not required to meet the burden of disproving the loss until the amount of loss is established by the victim. (*Travis J.*, at p. 204.)

The lion's share of the restitution at issue in this appeal relates to the trips made to and from San Francisco for the victim's medical appointments and included a $3,000 claim based on a month of lost wages for the victim's mother. No documentation of the trips or the wages was provided, either to the probation officer or to the court at the time of the restitution hearing. The itemized statement of loss supplied by the victim contained no details and was not "an adequate factual basis" for the claims relating to the trips to the victim's medical appointments. (*Giordano*, *supra*, 42 Cal.4th at p. 664; contrast *Gemelli*, *supra*, 161 Cal.App.4th at p. 1544 [restitution proper when statement of

6

the victim was "detailed and facially credible in that it explains how each of the claimed losses is related to the [crime]"; *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048 [restitution supported by itemization of the amounts sought, which included a recitation of the victims' medical bills and receipts relating to a traditional healing ceremony].)

The trial court implicitly recognized the information in the probation report and statement of loss did not constitute a prima facie case, because it asked the prosecutor for additional information regarding the number of trips, the nature of the victim's mother's employment, and the circumstances of her leave, specifically indicating it would not award the $3,000 sought without additional details to support the claim. The mother advised the court through the prosecutor she had made 15 round-trips to medical appointments during an approximately one-month period and had lost the claimed income after taking a month of leave from her job as a clerical employee at a law office. But the mother's statements, which provided only slightly more detail than the statement of loss and probation report, did not supply information sufficient to support a restitution award in the amounts claimed.

Defense counsel were skeptical of the number of medical appointments necessary to treat the victim's broken arm and mother's claim she had missed an entire month of work.[3] Their only effective means of challenging the claim would have been through cross-examination, something the court refused to permit. While a defendant does not have a Sixth Amendment right to compel a victim to testify and submit to cross-examination on a claim, "the trial courts retain discretion to permit such cross-examination on a case-by-case basis." (*People v. Cain* (2000) 82 Cal.App.4th 81, 86-87 & fn. 4.) Due process precludes a restitution award when the procedures used to

---

[3] Addressing the discrepancy between the 15 trips claimed by the mother and a full month of leave, the court stated, "I mean there are all kinds of alternative interpretations for why the mother missed work other than going to a doctor's appointment, and it's just speculation on my part of what those reasons would be." That was defense counsel's point—the itemized claim and mother's statements to the district attorney offered the medical appointments as the sole reason she missed work, and absent additional information, the court could only speculate as to why she would have had to take an entire month of leave.

determine restitution are fundamentally unfair. (*Id*. at p. 87.) In our view, the juvenile court's decision to approve the victim's undocumented claim based solely on his mother's off-the-record statements to the district attorney rendered the process fundamentally unfair, because defense counsel had no realistic means of rebutting her statements or investigating the restitution claim.

For these reasons, the portion of the restitution order relating to the trips to and from the victim's medical appointments must be reversed and remanded for a new hearing. Though the victim's mother may elect to testify at the hearing, we do not suggest such testimony is necessary to demonstrate an entitlement to restitution. The submission of additional documentation (e.g., redacted employment records, invoices from medical appointments in San Francisco) could be sufficient to support the claim without the need for any such testimony. And, assuming the victim's mother did testify, the juvenile court may and should limit the questioning to avoid harassment and protect legitimate privacy concerns.

### III. DISPOSITION

The portion of the restitution order relating to gas, bridge tolls, parking and lost income (totaling $3,350) is reversed and the case is remanded for a new restitution hearing consistent with the views expressed in this opinion.

_____
NEEDHAM, J.

We concur.

_____
JONES, P.J.

_____
SIMONS, J.

8