Filed 1/11/16  In re P.T. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re P.T., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>      v.<br><br>P.T.,<br><br>   Defendant and Appellant. | F071318<br><br>(Super. Ct. No. 513414)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Valli Israels, Judge.

Thomas W. Casa, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P.J., Kane, J. and Poochigian, J.

Minor P.T. appeals a restitution order made pursuant to Welfare and Institutions Code[1] section 730.6. He contends there was insufficient evidence the victim suffered any economic loss from P.T.'s conduct and the court's order was arbitrary and capricious. We affirm.

*FACTS AND PROCEDURAL HISTORY*

On July 4, 2013, Ripon police officers responded to a report of a car doing donuts on park property. P.T. and a companion (17-year-old D.P.) fled in a van with the officers in pursuit. The van reached speeds of 80 miles per hour and ran three stop signs before hitting a sycamore tree. At that point, the minors fled on foot. P.T. was apprehended and arrested, and he admitted that he was driving the van during the pursuit.

Four days later, the San Joaquin District Attorney filed a six-count juvenile wardship petition (§ 602) against P.T. He was charged with three felony offenses, evading arrest (Veh. Code, § 2800.2, subd (a); count 1), receiving stolen property (Pen. Code, § 496, subd. (a); count 2), and vandalism (Pen. Code, § 594, subd. (a)(3); count 3), and three misdemeanor offenses, resisting a peace officer (Pen. Code, § 148, subd. (a)(1); count 4), driving without a license (Veh. Code, § 12500, subd. (a); count 5), and hit and run with property damage (Veh. Code, § 20002, subd. (a); count 6).

On August 28, 2013, the parties reached a plea agreement whereby P.T. agreed to admit the allegations of evading arrest (count 1) and hit and run (count 6) with a maximum confinement of three years two months in exchange for dismissal of the remaining counts and, as stated by P.T.'s attorney, "regarding the vandalism count [count 3], there will be no request for restitution of this minor." The juvenile court accepted P.T.'s admission of counts 1 and 6 as knowing, voluntary, and intelligent, and

---

[1]    Further statutory references are to the Welfare and Institutions Code unless otherwise noted.

found that he came within the provisions of section 602. The court dismissed the remaining four counts at the People's request.

Because P.T. was a resident of Modesto in Stanislaus County, the court referred the matter to Stanislaus County for disposition. On October 3, 2013, in Stanislaus County, the juvenile court declared P.T. a ward of the court. P.T. was placed on probation and ordered to serve 80 days in juvenile hall. In addition, the court ordered P.T. and his legal parent to pay a restitution fine of $100 and restitution "in the amount and manner determined by the probation officer."

The probation officer later set the restitution amount at $8,100. P.T. and his parent contested the payment of any restitution, and a *Cervantes* hearing[2] was held February 6, 2015.

The People called Gerald Barton, who lived at the property where P.T. crashed into a tree as he was being pursued by the police. Barton testified that P.T.'s vehicle struck a sycamore tree adjacent to his driveway and "damaged approximately 45 percent of the phloem tissue and cambium tissue on the trunk of the tree."[3] Barton explained that he was very familiar with trees in general because his family had grown walnut trees for 102 years and they also grew almond and olive orchards. Barton thought the damage to the sycamore from being hit was "comparable to the damage that would take place if you're using a shaker to shake a tree to harvest the walnut crop." If the operator of a shaker is not careful, the shaker "can slip the bark or the phloem tissue and create a

---

[2]     In *People v. Cervantes* (1984) 154 Cal.App.3d 353, 361, this court held a defendant has the right to judicial determination of the propriety of a restitution order and of the amount to be paid. (See § 730.6, subd. (h)(2).)

[3]     Barton further explained that phloem tissue "is commonly referred to as the bark of the tree, and it conducts the nutrients from the canopy down to the root system" and cambium tissue "is the very thin layer of cells between the phloem and the … hardwood of the tree that provides the growth."

wound" similar to the wound P.T. caused. In the case of a walnut or almond tree, Barton said such damage "definitely shortens the life."[4]

The sycamore tree P.T. hit was about 30 years old and was one of 114 trees lining his driveway. The trees had been purchased as small trees and then grown for 30 years. Soon after the injury to the tree, Barton "surgically removed the damaged tissue and treated it with a wound dressing." Since then, he tried to keep decay from entering the hardwood of the tree. At the time of the hearing (about 19 months after the crash), callus tissue was "slowly growing to try to cover the wound," but, in Barton's opinion, the wound was so large, it would never be able to fully cover the wound. Barton was asked what the consequence to the tree would be from the damage. He responded: "It's hard to predict, but I think that it will—based on our experience with damaged walnut trees from tree shakers, eventually it will decline and have to be removed. But predicting how long that will take is something very difficult. It may be ten years."

Barton asked a tree company what the cost would be to find a sycamore of comparable size to replace the damaged tree, and the estimate he received was $25,000 to $30,000. He also found a formula at a Purdue University Web site to estimate the cost of the damage to the tree. At first, Barton described the Purdue formula as an estimate of "the cost of replacing trees." Later in his testimony, however, he was asked whether the Purdue calculation gave "a number for replacing the whole tree," and Barton replied that it did not. "It is an attempt to evaluate the damage, not the cost of replacing the tree." Although we have not located any documentation of the Purdue formula calculation in the clerk's transcript, Barton testified that his calculation took into consideration the size

---

[4] Asked whether he suffers any loss as a result of such a wound to a nut tree, Barton testified: "Yes, the production declines. And other things being equal, if all the other trees were healthy in an orchard, that would be the first one that would be removed. It may take several years before that happens, but they decline and ultimately become unproductive."

of the tree, the type of tree, and the tree's location and health.  He also factored in his determination that about 45 percent of the tree was damaged.

Barton initially came up with a restitution request of $8,100 based on his Purdue formula calculation only.  On the day of the hearing, however, Barton discovered a mistake in his calculation "related to the value cross-section per square inch" in his Purdue formula calculation.  After correcting his mistake, Barton calculated the Purdue formula value as $3,210.  He then changed his restitution request to $7,792, which he explained was an average of the replacement cost estimate he received from the tree company and the Purdue formula.[5]  Barton said he wanted "to be fair" and he was "not out to gouge anybody, but this is a loss, and one that should not have happened but it did."

Barton also testified that the sycamore trees lining his driveway provided "a great source of enjoyment to drive down our driveway almost any time of the year, but certainly during the summer when the driveway is shaded by this canopy of trees."  Losing one tree out of a very uniform row of trees was "very significant" to him.

In cross-examination, Barton said that his cost in treating the wound on the tree was not great.  He spent about six hours total treating the tree and minor costs for materials.  On the day of the hearing, he had treated the tree and he saw that the callus tissue was extending underground, "which was good to see."

After the attorneys completed their questioning, the court asked Barton, "Sir, the amounts that you're coming to, the $8[,]100, the $7,000, all of these, where exactly are those amounts coming from?"  "Is the money being spent on the materials to replace it?  To dress it?"  Barton said:  "No.  That's considered—that number was derived by trying to value the tree itself.  I didn't enter any of the cost of treating the tree."  After noting

---

[5]     Barton's new restitution request appears to be the average of $3,210 (his corrected Purdue formula calculation) and $12,375 (45 percent of $27,500, which is the midpoint of the tree company's estimate of $25,000 to $30,000 to replace the tree).

that the cost of removing the tree alone would be greater than $1,500 because of its location, Barton explained, "[T]he formula that I used was related to the value of the tree, not the cost of treating it, your Honor."

Barton described his Purdue formula calculation: "If you took the Purdue University formula and applied it to the full value of the tree, you come up with a value of $44,625. Then you apply their varietal factor, which knocks it down, which allocates only 40 percent, plus location of 90 percent, and condition of 100 [percent]. And so you come up with a value of the tree of $16,065." However, Barton seemed to refer to this as his "initial calculation," which, in turn, suggested that the value of $16,065 was not the amount he ultimately used to reach his corrected Purdue formula calculation of $3,210.

On March 26, 2015, the juvenile court ordered restitution of $3,210. The court explained its reasoning as follows:

> "We did hear a lot of evidence from Mr. Barton, the property owner, about the damage to his Sycamore tree.… [¶] But what I'm going to focus on now is the calculations. He focused on a couple of different calculations on how to figure out damage to the tree. One of them was around $12,000; another of them was at $8[,]100, which he later revised to $3,210, and he was asking for the average of the two.
>
> "Given what we've heard … what the Court is going to do, the Court is going to minimize the restitution as much as possible. I'm going to order restitution in the amount of $3,210 for the damage to the tree. That is the responsibility of the minor and his guardian, which in this case would be the mother.
>
> "And the reason I am taking that figure as opposed to any higher figure is because, especially in this juvenile case, I believe that there should be some responsibility to try to mitigate the damages in this case. This is a minor. And since there are two ways of figuring out the damage, the Court is going to find that the damages to the tree are in the amount of $3,210. The minor must pay restitution for that. [¶] So I'm going to give the minor the benefit of the doubt between the two theories that the tree owner used to calculate the damages."

6.

# DISCUSSION

## I. Sufficiency of the evidence of economic loss

"It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs an economic loss as a result of the minor's conduct shall receive restitution directly from that minor." (§ 730.6, subd. (a)(1).)

A restitution order, to the extent possible, "shall identify each victim" and specify "the amount of each victim's loss to which it pertains, and shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602 …." (§ 730.6, subd. (h).) The amount of restitution includes "[f]ull or partial payment for the value of stolen or damaged property. The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (*Id.*, subd. (h)(1)(A).)

"The term 'economic loss' is accorded an expansive interpretation under our laws." (*In re Alexander A.* (2011) 192 Cal.App.4th 847, 854, fn. 4 [citing examples of proper restitution awards for economic loss].) Further, "[i]n order to restore the economic status quo, to the extent that it is possible when a criminal act has injured a victim, restitution orders must not be limited to the amount of money that has been paid or lost prior to the restitution hearing." (*People v. Giordano* (2007) 42 Cal.4th 644, 658.)

"The standard of review of a restitution order is abuse of discretion. 'A victim's restitution right is to be broadly and liberally construed.' [Citation.] '"When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court."' [Citations.]" (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.) When an appellant contends the evidence was insufficient to establish the amount awarded, we review for substantial evidence. (*In re Travis J.* (2013) 222 Cal.App.4th 187, 203.)

In this case, P.T. does not dispute he hit Barton's sycamore tree and the tree was damaged as a result, but he claims the damage to the tree did not cause any economic loss to the property owner. P.T. observes that the tree was not knocked over or destroyed and has not required removal and there was no evidence that the damage to the tree decreased the value of the property.

However, P.T.'s claim ignores Barton's testimony that the tree suffered damage that it will never fully recover from. It is true that Barton stated it would be "hard to predict" how long it would be before the damaged tree had to be removed, but this does not mean P.T.'s conduct caused no economic loss. (Cf. *People v. Giordano*, *supra*, 42 Cal.4th at p. 658 ["restitution orders must not be limited to the amount of money that has been paid or lost prior to the restitution hearing"].) The tree was purchased 30 years earlier, and a replacement tree at its current size would cost about $25,000 to $30,000. Barton's testimony provided substantial evidence that the damage P.T. caused would shorten the life of the tree and, further, that the tree has economic value. Therefore, we reject P.T.'s claim that there was insufficient evidence of economic loss from damage to the sycamore tree to support a restitution order.

## II.    *Evidentiary foundation for the amount of the restitution order*

Next, P.T. contends the trial court's calculation of the restitution award was arbitrary and capricious and lacked evidentiary foundation. We disagree.

Barton employed two methods for assigning a value to the damage done to his sycamore tree. First, he obtained an estimated replacement cost of $25,000 to $30,000, not including the cost of removing the damaged tree. Second, he used the Purdue formula to "attempt to evaluate the damage" to the tree, not the replacement cost. He originally made a mistake in his calculation, and he corrected himself at the hearing, testifying that the correct calculation under the Purdue formula was $3,210. Barton then took an average of these two methods and requested $7,792 in restitution.

8.

P.T. argues that Barton's testimony was confusing, and his calculations did not always make sense.  Notably, however, P.T. does not claim the Purdue formula is an invalid method for determining the economic loss caused by the damage to Barton's sycamore tree.  The juvenile court relied on Barton's Purdue formula calculation in setting the restitution amount.  Barton's testimony on the Purdue formula and his calculation was sufficient and sufficiently clear to provide a factual and rational basis for the court's award.

## *DISPOSITION*

The judgment is affirmed.