Filed 12/22/23  P. v. Hale CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LAANDRE ANTHONY HALE,<br><br>    Defendant and Appellant. | A167871<br><br>(Solano County Super. Ct. No. FCR352561) |

Defendant Laandre Anthony Hale was convicted of armed robbery causing great bodily injury.  He appeals from a court order, made pursuant to Penal Code[1] section 1202.4, awarding $30,730.67 in restitution to the California Victim Compensation Board (Board) to cover the Board's payments of hourly wages and piece rate commissions to the victim for lost income resulting from Hale's criminal conduct.  Hale argues the trial court abused its discretion by relying on speculation rather than on evidence of the victim's actual losses.  We conclude his arguments rest on a misreading of the statutory scheme outlined in section 1202.4 and overlook an evidentiary presumption that requires the court to include in its restitution award Board payments to a victim if the presumption is not rebutted.  We affirm.

---

[1] Undesignated statutory references are to the Penal Code.

1

# I. BACKGROUND

On March 15, 2020, a man was shot in the right thigh in the course of being robbed by two hooded individuals outside of a store in Dixon, California. Police, with the help of surveillance video, arrested Hale for the crime.  In June 2022, the Solano County District Attorney filed a felony complaint charging Hale with, among other things, armed robbery causing great bodily injury.

In June 2022, Hale and the People agreed to a negotiated disposition of his case.  Hale pleaded no contest to the robbery charge and admitted the accompanying sentence enhancement allegations with the understanding that he would be sentenced to 11 years in state prison.  The court accepted Hale's plea and admission, and found him guilty of the robbery and the enhancement allegations to be true.  It sentenced him to 11 years in state prison, awarded him certain credits, and imposed certain fines and fees.  The court reserved jurisdiction regarding victim restitution.

Subsequently, the People moved under the California Constitution and section 1202.4 for an order that Hale pay restitution to the Board totaling $30,730.67, the amount the Board paid to the robbery victim for economic losses suffered by the victim as a result of Hale's criminal conduct.  This restitution amount consisted of $30,117.85 for lost income and $612.82 for medical expenses.

In support of their restitution motion, the People submitted 13 pages of partially redacted documents provided by the Board and certified by a Board custodian of records (Board documents).  The Board documents indicate the victim's employment ended on July 28, 2020, and that the Board paid the victim for income loss, net of income taxes, on three separate occasions as follows:  (1) $6,806.94 in lost hourly wages for the period from March 16, 2020

to July 12, 2020, the "end date on Employment Verification," based on the victim's 2019 tax and employment pay records; (2) $11,333.81 in lost piece rate commission income for this same time period based on the average of his commissions listed in his February 2020 pay stubs; and (3) $11,977.10, net also of unemployment benefits the victim received for the period from July 13, 2020 to November 15, 2020, the latter date identified as the "Doctor's Disability end date," which payment was based on the same records as the other payments.

Hale filed a written objection to the People's restitution motion. He contended most of the restitution sought appeared to be for projected income loss rather than actual income loss and would give the victim a windfall. He opposed the requested restitution amount in its entirety and asked that, in the alternative, the court find the victim's net loss to be either $6,806.94 or $11,977.10, the two amounts the Board paid the victim for the time period when the victim was employed.

At the restitution hearing, the prosecutor contended the Board documents indicated the victim had lost the income paid to him because he was unable to work as a result of defendant's criminal conduct. The prosecutor argued the amount was reasonable and not speculative because it was based on pay checks indicating what the victim had been paid before the incident.

Hale's counsel submitted on Hale's written general objection. He also contended there was a lack of foundation for much of the lost income paid by the Board, including because, "even if the doctor assessed that he couldn't do certain work," it was not shown "that he couldn't do any alternative work" for the period after his employment. Payments for this time period were "rewarding for time of work at . . . a hypothetical" without such a showing.

3

Counsel argued that the court, if it ordered any restitution, should order Hale to pay $6,806.94 to the Board, the amount counsel contended the Board actually paid to the victim from March to July 2020, when the victim was employed but not working.

The prosecutor responded that the victim was owed lost income for July 2020 to November 2020, when he was not employed, because he was under doctor's orders not to work during this time. The prosecutor also contended that, from March 2020 to July 2020, the Board paid the victim, in addition to $6,806.94, another $11,977.10 because it mistakenly did not initially compensate him for his loss of piece rate commission income for this time period.

At the conclusion of the hearing, the court ordered Hale to pay the Board the restitution requested, $30,730.67, a directive the court memorialized in a written order. The court said it appeared the victim was not allowed to work after July 2020 "because of his medical condition, being shot in the leg." The court did not think "a six[-]month period of him not being able to work and recovering lost income is unreasonable. And it appears to be related to what happened in this offense for which Mr. Hale was convicted."

Hale filed a timely notice of appeal from the court's restitution order.

## II. DISCUSSION

Article I, section 28, subdivision (b), of the California Constitution sets forth a " 'broad constitutional mandate . . . that restitution must be imposed "in every case . . . in which a crime victim suffers a loss." ' " (*People v. Kelly* (2020) 59 Cal.App.5th 1172, 1178.) In keeping with this mandate, " 'statutory provisions implementing th[is] constitutional directive have been broadly and liberally construed.' " (*People v. Stanley* (2012) 54 Cal.4th 734, 737; see also

4

*People v. Baudoin* (2022) 85 Cal.App.5th 1184, 1191 [" 'A victim's restitution right is to be broadly and liberally construed.' "].)

Section 1202.4 implements this constitutional mandate. (*People v. Giordano* (2007) 42 Cal.4th 644, 652–656 (*Giordano*).) Section 1202.4 provides that, subject to exceptions that do not apply in this case, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).)

Additionally, "[i]f, as a result of the defendant's conduct, the Restitution Fund has provided assistance to or on behalf of the victim . . . pursuant to Chapter 5 (commencing with Section 13950) of Part 4 of Division 3 of Title 2 of the Government Code, the amount of assistance provided *shall be presumed* to be a direct result of the defendant's criminal conduct and shall be included in the amount of the restitution ordered."[2] (§ 1202.4, subd. (f)(4)(A), italics added.) This presumption is rebuttable by the defendant, but to overcome it, "a defendant must prove that his criminal conduct played, *at most*, ' " 'only an "infinitesimal" or "theoretical" part in bringing about' " ' the injury." (*People v. Lockwood* (2013) 214 Cal.App.4th 91, 100–101, 102–103.)

"The amount of assistance provided by the Restitution Fund shall be established by copies of bills submitted to the California Victim Compensation Board reflecting the amount paid by the board and whether

---

[2] The Restitution Fund is the fund from which the Board compensates crime victims for their economic losses. (Pen. Code, § 1202.4, subd. (f)(2), Gov. Code, § 13950 et seq.)

the services for which payment was made" for such things as medical expenses or wage loss. (§ 1202.4, subd. (f)(4)(B).) "Certified copies of these bills provided by the board and redacted to protect the privacy and safety of the victim or any legal privilege, together with a statement made under penalty of perjury by the custodian of records that those bills were submitted to and were paid by the board, shall be sufficient to meet this requirement." (*Ibid*.)

A defendant "has a right to a hearing before a judge to dispute the determination of the amount of restitution." (§ 1202.4, subd. (f)(1); see *People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172.) " ' " '[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt.' " ' " (*In re S.E.* (2020) 46 Cal.App.5th 795, 803–804.)

We review a court's restitution order for abuse of discretion. (*People v. Montiel* (2019) 35 Cal.App.5th 312, 318.) " 'No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered.' " (*People v. Lehman* (2016) 247 Cal.App.4th 795, 801.)

Hale concedes that the Board documents satisfy the requirements of section 1202.4, subdivision (f)(4)(B) to establish the amount of assistance the Board provided to the victim here, and he acknowledges the rebuttable presumption contained in section 1202.4, subdivision (f)(4)(A). He also does not dispute that, according to section 1202.4, subdivision (f)(4)(A), the amount of assistance provided "shall" be included in the amount of restitution ordered. He further concedes that the court properly ordered Hale to pay restitution to the Board for the compensation it paid to the victim for the hourly wages he lost from March 2020 to July 2020, when the Board

6

documents indicate he was employed, and for his medical expenses, a total of $7,419.76.

But Hale argues that the trial court abused its discretion in ordering him to pay the Board the remainder of what it paid to the victim, $23,310.91, for piece rate commission income from March 2022 to November 2022 and for hourly wages between July 2022 and November 2022. Hale contends the People did not prove any of these payments were for the victim's actual losses, rendering this part of the court's order speculative. We disagree.

Hale's arguments show a lack of understanding of the provisions contained in section 1202.4 governing restitution owed to the Board when the Board has paid compensation for economic losses to a crime victim, including the evidentiary presumption created by these payments. Instead, he relies on a variety of cases that do not involve Board payments and, therefore, do not implicate any of the statutory provisions in section 1202.4 that we have discussed.[3] Most importantly, none of these cases involve an evidentiary presumption created by the payments discussed in those cases. Nor do they include a statutory directive that presumed payments "shall" be included in the amount of restitution ordered, which, by the ordinary language and structure of section 1202.4, subdivision (f)(4)(A), appears to be a mandatory provision of that provision. (See *People v. Guitierrez* (2014) 58 Cal.4th 1354, 1370 [word "shall" used in a Penal Code sentencing provision appeared to be mandatory based on the "ordinary language and structure" of the relevant

---

[3] Hale relies on cases such as *In re Travis J.* (2013) 222 Cal.App.4th 187 (*Travis J.*); *People v. Chappelone, supra,* 183 Cal.App.4th 1159; *Giordano, supra,* 42 Cal.4th 644; *People v. Millard* (2009) 175 Cal.App.4th 7; *People v. Rivera* (1989) 212 Cal.App.3d 1153; *In re Anthony M.* (2007) 156 Cal.App.4th 1010; *People v. Thygesen* (1999) 69 Cal.App.4th 988; *People v. Jones* (2010) 187 Cal.App.4th 418; and *People v. Vournazos* (1988) 198 Cal.App.3d 948.

provision]; *Tarrant Bell Property LLC v. Superior Court* (2011) 51 Cal.4th 538, 542 ["we 'ordinarily' construe . . . the word 'shall' as mandatory"]; see *People v. Ledesma* (1997) 16 Cal.4th 90, 95 [the word "shall" as used in the Penal Code is construed " 'according to the context and approved usage of the language' " as stated in section 7, subdivision 16].)

Hale relies most heavily on *Travis J.*, *supra*, 222 Cal.App.4th 187, including to twice assert that, as stated in *Travis J.*, "[a] defendant bears the burden of proving that the amount of restitution claimed by the victim exceeds [the actual loss], but the defendant is not required to meet that burden until the [actual loss] is established." (*Id.* at p. 204.) But *Travis J.* did not involve any Board payments to a crime victim and, therefore, did not implicate any of the provisions contained in section 1202.4 that we discuss here, such as the evidentiary presumption created by the Board's payments to a crime victim. Rather, in *Travis J.*, the juvenile court was presented with the victim's claim of economic loss to a probation officer, doubted its credibility, and instead ordered Travis to pay the victim a lesser amount, $850, based on its own estimates of the cost to repair the car tire that Travis had damaged and the wages that would be lost for the time taken to repair the tire. (*Id.* at pp. 203–204.) The appellate court, analyzing this order under Welfare and Institutions Code section 730.6, and without application of the evidentiary presumption or other provisions contained in section 1202.4, concluded the juvenile court abused its discretion by basing its order "on nothing more than speculation." (*Travis J.*, at p. 204.)

Unlike in *Travis J.*, the trial court here was required to, and did, base its restitution order on appropriate documentation from the Board, which created a presumption that, left unrebutted by Hale, required the court to include in its restitution order that Hale pay the Board for the lost income it

8

paid to the victim in this case. The court's order was consistent with the statutory directives contained in section 1202.4, subdivision (f)(4). *Travis J.* and the other cases cited by Hale, none of which involve the Board or the relevant directives contained in section 1202.4, are inapposite. The People were not required to prove anything other than that the Board paid the victim for certain income loss to establish the rebuttable presumption that these losses were a direct result of Hale's criminal conduct.

Repeatedly, Hale either argues that the People failed to present evidence establishing the amount of the victim's income losses, thereby ignoring the evidentiary presumption afforded to the People by section 1202.4, subdivision (f)(4)(A), or that he, Hale, somehow rebutted this evidentiary presumption by raising what he considers to be inadequacies and internal inconsistencies contained in the Board documents. His arguments are unpersuasive in light of the evidence presented and the directives contained in section 1202.4, subdivision (f)(4).

For example, Hale argues that the Board documents are not consistent with one another because they indicate the victim was paid for lost wages when he was unemployed and collecting unemployment benefits. He contends these Board payments were duplicative of these unemployment benefits and, therefore, gave the victim an improper windfall. But nowhere does Hale establish that the victim's lost wages and his unemployment benefits were necessarily the same amount. The Board's documents indicate otherwise. They show the Board paid the victim for lost income during his disability period and after his employment ended only *after* deducting his unemployment benefits from the amount the Board determined the victim lost in wages during this time period. Based on this documentation, the court

9

could reasonably conclude the victim was made whole by the Board's payments without receiving any windfall.

Hale also argues that the Board's payments to the victim for his lost piece rate commission income were not rationally calculated because the Board documents do not describe how it determined these amounts constituted lost piece rate commission income. According to Hale, there was no reasonable basis for these payments because the Board documents do not state "what that 'piece rate' payment was for or what the victim did to earn that extra payment. Though there was a person from [the Board] present in court, the prosecutor elected not to provide any explanatory testimony from that person." Thus, it was "unclear whether [the victim] worked as a salesperson, an installer, a janitor, a customer service representative, a file clerk, or in some other position. Nothing in the [Board documents] explains what 'piece rate' is, how it was earned, and how each week's 'piece rate' was calculated." Also, there was "no evidentiary basis" for the prosecutor's assertion that the Board mistakenly left out this lost commission income from its first payment to the victim.

These arguments overlook three critical things. First, the Board documents make clear what the evidentiary basis for these payments was: the victim received compensation for lost piece rate commission based on the average of the commissions he received in February 2020, according to his February 2020 pay stubs. Second, Hale fails to establish that the Board was required to provide any further information, given the evidentiary presumption created by its payments to the victim. Third, Hale ignores that he elected not to follow the procedure outlined in section 1202.4, subdivision (f)(4) for defendants to seek additional information from the Board. It provides that, "[i]f the defendant offers evidence to rebut the presumption

established by this paragraph, the court may release additional information contained in the records of the board to the defendant only after reviewing that information in camera and finding that the information is necessary for the defendant to dispute the amount of the restitution order." (§ 1202.4, subd. (f)(4)(C).) Hale did not call the Board representative who was present at the hearing as a witness in order to question that individual in an effort to rebut the presumption. His failure to make any effort to rebut the presumption also dooms his arguments here.

Hale further argues that the court's order that he pay the Board for the victim's lost commission income was not rational because the Board did not follow the statutorily required method for establishing the amount of commission income the victim was due. The Board documents indicate that it compensated the victim for lost commission income based on an average of the commissions he received in February 2020, the period just prior to the robbery's occurrence. Hale argues this evidence was insufficient because, as stated in section 1202.4, subdivision (f)(3)(D), "[c]ommission income shall be established by evidence of commission income during the 12-month period prior to the date of the crime for which restitution is ordered, unless good cause for a shorter time period is shown."

The People disagree. They contend that Hale has forfeited this argument by his failure to first raise it below and, further, that the provision he cites applies only to restitution to be paid directly to crime victims, not restitution to be paid to the Board for compensation it has already paid to the victim.

We agree with the People. Hale's argument lacks merit because it relies on a provision, section 1202.4, subdivision (f)(3)(D), that applies when direct restitution is sought for a victim's claimed lost commission income, not

11

on section 1202.4, subdivision (f)(4), which applies when restitution is sought for Board payments already made to a victim for lost commission income as determined by the Board.

Hale's argument in effect presents a question of statutory interpretation. " ' " ' "As in any case involving statutory interpretation, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning." ' " [Citation.] "[W]e consider the language of the entire scheme and related statutes, harmonizing the terms when possible." ' " (*People v. Reyes* (2020) 56 Cal.App.5th 972, 982.) " ' " 'If the statute's text evinces an unmistakable plain meaning, we need go no further.' " ' " (*First Student Cases* (2018) 5 Cal.5th 1026, 1035.)

The text of section 1202.4 regarding commission income clearly differentiates between the proof necessary to directly compensate the victim and the proof necessary to compensate the Board. As Hale points out, section 1202.4, subdivision (f)(3)(D) states, "[c]ommission income shall be established by evidence of commission income during the 12-month period prior to the date of the crime for which restitution is ordered, unless good cause for a shorter time period is shown." But Hale fails to mention that section 1202.4, subdivision (f)(3) begins, "To the extent possible, the restitution order shall be prepared by the sentencing court, [and] shall . . . be of a dollar amount that is sufficient to fully reimburse *the victim or victims* for every determined economic loss incurred as a result of the defendant's criminal conduct," including commission income as stated in subdivision (f)(3)(D). (Italics added.) This italicized language makes clear that subdivision (f)(3)(D) does not control here—the recipient of the restitution, the Board, is not the victim, and the order appealed from does not direct that reimbursement be paid to

12

the victim, who has already been made whole by the Board. *That* circumstance is governed by section 1202.4, subdivision (f)(4), which, as we have discussed, begins: "(A) If, as a result of the defendant's conduct, the Restitution Fund has provided assistance to or on behalf of a victim . . . , the amount of assistance provided *shall be presumed* to be a direct result of the defendant's criminal conduct and shall be included in the amount of the restitution ordered." (Italics added.)

Section 1202.4, subdivision (f)(4), makes no mention of any evidentiary requirements other than the required Board documentation we have discussed and which was submitted to the court here. The subdivision's obvious purpose is to eliminate the need for any such requirements unless and until the defendant rebuts the presumption created by the Board's payments. (See *In re S.E.*, *supra*, 46 Cal.App.5th at p. 805 [indicating the presumption contained in section 1202.4, subd. (f)(4) imposes "a burden of refutation" on defendant].) Further, the Board documents make clear there was an evidentiary basis for the commission income it paid—the average of the amount of commission income the victim received in February 2020. We therefore reject Hale's argument that there was insufficient evidence to support the court's order that he pay restitution to the Board for its payments to the victim for lost commission income.[4]

Finally, Hale argues the court's order that he pay restitution to the Board for the victim's lost income during his disability period and after his employment ended was not rational because "there was no explanation as to what determination was made by any doctor about the victim's ability to perform any type of work." Thus, he argues, the court's order was based on

---

[4] In light of our conclusion, we do not address the People's forfeiture argument.

13

speculation, as was the case in *Travis J.* Here again, Hale fails to account for the evidentiary presumption created by the Board's payments to the victim, and the procedure contained in section 1202.4 by which he could seek additional information. He fails to establish that the People were required to prove anything further than what it presented to the court. The court concluded that "a six[-]month period of [the victim] not being able to work and recovering lost income" was not unreasonable in light of his being shot in the leg by Hale. Hale offers us no reason to conclude the court acted beyond its discretion in reaching this conclusion.

### III. DISPOSITION

The order appealed from is affirmed.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

14